UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUE A. WILSON,

    Plaintiff,                                  Civil Action No. 05-40044

v.                                          HON. PAUL V. GADOLA
                                            U.S. District Judge
                                            HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sue A. Wilson brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits (DIB) under Title II and Title XVIII of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On April 8, 2003, Plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act, alleging an onset of disability date of February 28, 2003 (Tr. 51-53). After the initial denial of her claim,

Plaintiff filed a timely request for an administrative hearing, conducted on August 12, 2004 in Alpena, Michigan before Administrative Law Judge (ALJ) Larry Temin  (Tr. 270-304). Plaintiff, represented by Kenneth Laritz,  testified. (Tr. 273-295).   Stephanee Leach, acting as Vocational Expert (VE) also testified (Tr.  295-303).  The ALJ found that although Plaintiff was unable to perform any of her past work, she retained the capacity to  perform "a significant number of jobs in the national economy" (Tr. 26).  On January 31, 2005, the Appeals Council denied review  (Tr.5-7).  Plaintiff filed for judicial review of the final decision on February 7, 2005.

## BACKGROUND FACTS

Plaintiff, born November 28, 1957 was age forty-seven when the ALJ issued his decision (Tr. 27, 51).  She completed high school  (Tr. 17).  Plaintiff previously worked  as a secretary at her husband's auto parts store (Tr. 17).  Plaintiff alleges that osteoarthritis, rheumatoid arthritis, fibromyalgia, thoracic outlet syndrome, spina bifada and scoliosis prevent her from working  (Tr. 17).

### A.     Plaintiff's Testimony

Plaintiff, forty-six at the time of the hearing, testified that she stood 5' 2" and weighed 140 pounds (Tr. 274).  She reported that she lived in a single-family dwelling with her husband and the youngest of their three children (Tr. 275).  A high school graduate, she stated that she read well and could perform simple arithmetic, but experienced difficulty writing due to hand pain (Tr. 275).  She  reported that until the alleged onset of her disability at the end of February, 2003, she worked as a secretary at an auto parts store in Roger City,

Michigan which she and her husband co-owned (Tr. 276-277). She testified that her work consisted of accounting activities, such as paying bills and monitoring the ledgers, along with answering the telephone (Tr. 277).

Plaintiff alleged that numbness, tingling, and pain in her hands made grasping and fine manipulations difficult (Tr. 279). She also reported that she experienced regular shoulder, low back, hip, and knee pain (Tr. 280). She stated that she was first diagnosed with rheumatoid arthritis in 1990, and that her physician had since recommended surgery for Carpal Tunnel Syndrome (CTS) (Tr. 280). She reported that she chose not to undergo surgery after her physician told her that it could not guarantee that her hand problems would be cured (Tr. 280). She estimated that her low back and hip pain had begun approximately ten months before the hearing, and that she had experienced right knee pain for two years (Tr. 280-281). She reported that she had experienced neck and shoulder pain for approximately three years (Tr. 281). She stated that her worst pain occurred in her right shoulder and left hand (Tr. 282). She described her pain level as a four to five on a scale of one to ten if she took Ultracet during the day and two Vicodin before bedtime, adding that she took Ambien for insomnia approximately three times a week (Tr. 283-284). She also complained of irritable bowel syndrome, which had been diagnosed four months before the hearing (Tr. 282).

Plaintiff stated that lifting even less than ten pounds created discomfort (Tr. 286). She estimated that she could not stand for more than fifteen to twenty minutes or walk for more than 200 feet (Tr. 286). She stated that she could not sit comfortably for more than ten to

fifteen minutes and experienced difficulty climbing stairs, lifting, and using a blow dryer (Tr. 287).

Plaintiff testified that she could groom herself, cook, perform light laundry chores, and watch television (Tr. 288). She stated that she had not had any "good days" lately, reporting that she was obliged to quit work after missing days due to her inability to stand, sit, and write (Tr. 288). She stated that in a typical day, fatigue and/or leg swelling obliged her to lie down two or three times for approximately forty-five minutes (Tr. 290). She indicated that she suffered from arthritis pain in her hands most acutely in the early morning and evening, stating that she had experienced hand problems for seven years (Tr. 291).[1] She alleged difficulty sleeping due to shoulder, knee, and neck pain as well as depression, reporting that although she discontinued anti-depression medication, she continued to take a natural serotonin (Tr. 293). She attributed her depression to her physical problems, stating that she also experienced low energy (Tr. 294). She assessed her self-esteem as "good," stating that she continued to make an effort to look her best (Tr. 294).

### B.     Medical Evidence

In August and September, 1995, Rheumatologist Charles J. Huebner, M.D., diagnosed Plaintiff with early osteoarthritic changes of the hands and degenerative syndrome, also noting "minimal swelling involving the left wrist and restricted internal rotation of the

---

[1] The ALJ observed that Plaintiff's second finger joints appeared to be covered with nodule-like growths (Tr. 291).

left hip" (Tr. 112-113). Dr. Huebner continued to treat Plaintiff, observing in July, 2002 that she experienced impingement syndrome in her right shoulder and osteoarthritis in her hands (Tr. 183). He encouraged Plaintiff to participate in aerobic and strengthening exercises (Tr. 183).

In July, 2001, Plaintiff complained of fatigue and symptoms of depression, stating that all of the anti-depressant medications she took previously caused side-effects (Tr. 144). Syed Naqvi, M.D., prescribed Ambien for Plaintiff's insomnia (Tr. 144). At a followup appointment the next month, Plaintiff reported that Ambien had regulated her sleep patterns, creating a significant improvement in her mental state (Tr. 143). Dr. Naqvi prescribed Prempro for Plaintiff's hot flashes (Tr. 143). In March, 2002, Plaintiff received a prescription for Lasix, after reporting bilateral swelling in the lower extremities (Tr. 137). Plaintiff reported improvement at a followup appointment (Tr. 136). February, 2003 exam notes show that Plaintiff sought treatment for minor gynecological problems, but demonstrated a normal gait and station (Tr. 127). The same month, Michael Detosayro, M.D., examined Plaintiff, noting that a test conducted four years earlier had been negative for rheumatoid arthritis (Tr. 200). Describing Plaintiff's complaints of pain as "fairly generalized," he commented that Plaintiff reported that her worst pain was in her neck (Tr. 200). Dr. Detosayro noted that an MRI and EMG of Plaintiff's neck did not show any abnormalities (Tr. 200). He prescribed Motrin 800 mg. and Flexeril, opining that Plaintiff should go back to physical therapy, which had resulted in an improvement of her condition (Tr. 200-201). He noted that Plaintiff had "significant myofascial trigger points in the right

trapezius and rhomboid, as well as in the right scalene muscles, . . . suggesting myofaxcial component of [the] thoracic outlet syndrome" (Tr. 201). A psychological assessment performed on the same day noted that Plaintiff complained of sleeping difficulties, but denied depression (Tr. 203). In March, 2003, Plaintiff complained of heart palpitations and dizziness (Tr. 124). April, 2003 exam notes indicate that Plaintiff's heart palpitations had ceased and that her anxiety had stabilized (Tr. 119).

A Physical Residual Functional Capacity Assessment performed in August, 2003 found that Plaintiff retained the ability to lift twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; and sit for approximately six hours (Tr. 206). The assessment found further that Plaintiff retained a limited ability to push and pull in the upper extremities, and should climb, stoop, kneel, crouch, and crawl on an occasional basis only (Tr. 207). Plaintiff was limited to occasional overhead reaching and frequent below shoulder reaching as well as occasional handling and fingering (Tr. 208). The report stated that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights (Tr. 209). The report concluded that Plaintiff was "partially credible," noting that she admitted to performing housework, shopping, joyriding in her husband's MG, and camping with her family (Tr. 210). A Psychiatric Review Technique performed the same month found that although Plaintiff suffered from depression, the degree of functional limitation caused by Plaintiff's depression was mild to minimal (Tr. 223).

In November, 2003, Plaintiff reported increased shoulder, hip, and knee pain (Tr. 230). An EMG conducted in January, 2004 showed "no denervation in the right upper

extremity or cervical paraspinal muscles," and no evidence of a cervical radiculopathy, but indicated moderately severe carpal tunnel syndrome, "somewhat worse on the left than the right" (Tr. 238).  In April, 2004, Steven E. Vorenkamp, M.D,. recommended endoscopic carpal tunnel release, stating that he believed surgery would alleviate Plaintiff's "night numbness and tingling with a low incidence of recurrence" (Tr. 256).  MRI results from August, 2004 show "no acute abnormality" of the knees and "moderate degenerative changes of the right hip" along with a "[n]ormal appearing left hip (Tr. 257-258).   An MRI performed at the same time showed "[a]dvanced degenerative changes involving the facet joint bilaterally at L5/S1 (Tr. 259).

    **C.**        **Vocational Expert Testimony**

VE Stephanee Leach classified Plaintiff's past work as semi-skilled, at the sedentary level of exertion (Tr. 298).  The VE stated that her testimony was consistent with the job descriptions found in the Dictionary of Occupational Titles (DOT). ALJ Temin  posed the following question to the VE:

> "Assume, please, individual the same age, education and work experience as [Plaintiff] with the following limitations.  Individual can lift, carry, push and pull up to 10 pounds occasionally, 5 frequently, in combination stand and/or walk two hours in an eight-hour workday and up to 30 minutes at a time and then would need to be able to sit for two to three minutes.  The individual can sit for eight hours in an eight-hour workday and up to two hours at a time and then would need to be able to change positions for two to three minutes . . . . The individual can occasionally stoop, kneel, crouch and climb ramps and stairs, cannot crawl or climb ladders, ropes or scaffolds.  The individual is unable to use the hands for fine manipulation or for force or gripping.  No more than occasional work above shoulder level.  No more than occasional writing and no writing for over 15 minutes out of every hour.  I'm sorry, forget the occasional writing, just no writing for over 15 minutes after every hour.

> The individual is unable to operate automotive equipment or work in unprotected heights or around heavy machinery and is unable to remember and carry out detailed instructions. Could such an individual perform any of [Plaintiff's] past relevant work, either as she performed it or as it's customarily performed in the . . ."[2]

(Tr. 298-299).

The VE replied that given the above limitations, Plaintiff could not perform her past work and did not possess skills transferable to other semi-skilled work, but indicated that Plaintiff could perform a reduced range of sedentary work subject to the above limitations (Tr. 299-300). The VE found that Plaintiff could perform 1,500 surveillance system monitor positions, 3,300 information clerk jobs, and 1,000 sorter positions (Tr. 300). The VE stated that if the hypothetical question included a preclusion on performing gross manipulations more than occasionally, the sorter positions would be eliminated (Tr. 300). The VE stated further that if the limitations included the need for the individual to be able to rise from a seated position for two to three minutes out of every forty-five minutes, the clerical position would be reduced to 750 jobs (Tr. 300). In response to questioning by Plaintiff's attorney, the VE stated that if the individual were limited to gross manipulation for fifteen minutes out of every hour, the clerk positions would be reduced by fifty percent (Tr. 301).

### D.     The ALJ's Decision

ALJ Temin found that Plaintiff suffered from the severe impairments of fibromyalgia/myofascial pain syndrome; osteoarthritis; bilateral hands; bilateral carpal tunnel

---

[2] At this point in the testimony, the VE interjected "no," apparently in anticipation of the ALJ finishing his sentence with the words "national economy" (Tr. 299).

syndrome; degenerative joint disease of the hips bilaterally; degenerative disc disease of the lumbosacral spine; scoliosis; impingement syndrome, bilateral shoulders; osteochondroma, right knee; and depression (Tr. 21). Nonetheless, he determined that although Plaintiff had a severe impairment or combination of impairments none met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Regulations No. 4 (Tr. 22).

He found that while Plaintiff was unable to perform any past relevant work, she retained

> "the residual functional capacity to perform a range of sedentary work. " She can lift/carry/push/pull five pounds frequently, 10 pounds occasionally. She can stand/walk two of eight hours but should not stand for more than 30 minutes at a time after which she must be allowed to sit for two to three minutes. She can sit for eight of eight hours but must be able to stand or walk every 45 minutes for two to three minutes. [Plaintiff] can occasionally stoop, kneel and crouch. She should never crawl. [She] can occasionally climb ramps/stairs, but should never climb ladders/ropes/scaffolds. [She] should never do work that requires either firm, forceful gripping or fine manipulation with either hand. She can occasionally perform tasks that require gross manipulation, using either hand. [She] can occasionally perform tasks that require work above shoulder level. She should never operate automotive equipment, work at unprotected heights or work around hazardous moving machinery. [She] should not be required to write for more than 15 minutes an hour. Due to her mental impairment, any job performed should not require the ability to remember or carry out detailed instructions" (Tr. 23).
> (Tr. 23).

Citing the VE's conclusions, the ALJ found that Plaintiff could perform 750 clerical positions, 1,500 surveillance monitor positions, and 3,300 information clerk jobs (Tr. 25). He found that Plaintiff's "allegations regarding her limitations are credible to the extent that they are consistent with the residual functional capacity assessed" (Tr. 26). In support of his non-disability finding, the ALJ citing Plaintiff's activities, including driving, housework,

going to shows, reading, and playing cards (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.     Credibility

Plaintiff argues that the ALJ improperly discounted her allegations of disability. *Plaintiff's Brief* at 1, 14-16. Citing *Duncan v. Secretary of HHS*, 801 F. 2d 847 (6th Cir. 1986), she maintains first, that the record of medical evidence supports her claimed limitations and second, that her determinable conditions could be "reasonably expected to produce the alleged disabling pain" *Felisky v. Bowen,* 35 F.3d 1027, 1037 (6th Cir. 1994); 20 C.F.R. § 404.1529.

*Social Security Ruling* (SSR) 96-7p states that the ALJ may not reject a claimant's

asserted limitations with a single, conclusory statement that the individual's claims have been considered or that the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id*. These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

SSR 96-7p states in part, "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . " *Id*. Second, SSR 96-7p mandates that:

> once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

*Id.*

C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication

> you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's finding that her medical conditions as documented in the records would not "reasonably be expected" to produce the severity of limitations she alleged. Pursuant to C.F.R. 404.1529(c)(3), the ALJ performed a credibility determination which allowed him to reasonably reject a portion of her allegations. First, although the record contains medical findings which partially support her allegations of pain, none of her care-providers indicated that her conditions were severe enough to render her disabled. In addition, the administrative findings include a thorough discussion of Plaintiff's medical history along with the non-disability conclusion which cited ample reasons to discount her claimed limitations. Plaintiff's physician noted in the month that she alleged the onset of disability that she exhibited a normal gait and station (Tr. 127). The same month, another physician noted that Plaintiff exhibited "a good range of motion of the lumbar spine with really no limitations in flexion, extension [and] lateral bending . . . . hip movements are full and good" (Tr. 201). August, 2004 impressions of Plaintiff's spine show "mild joint space narrowing," and mild dextroscoliosis of the lower lumbar spine with moderate degerative disc disease at L4/5 and mild grade I spondylolisthesis" (Tr. 260). With the exception of a finding of "severe neural foraminal stenosis on the right," all of of the imaging from that month show "mild" and "moderate"

results (Tr. 260-262). Plaintiff did not require the use of an assistive device (Tr. 251). She acknowledged that she continued to perform light housework and cook, along with performing child care chores "24/7" (Tr. 87). The same month that Plaintiff alleged the onset of disability, she told a care-giver that she enjoyed camping, playing cards, joy-riding in her husband's MG, and going to the movies (Tr. 203). Aside from her medical records which contain substantial evidence supporting a non-disability finding, she further undermined her claim by acknowledging a level of activity which belies disability.

Likewise, inconsistencies between Plaintiff's allegations of limitations found in the administrative transcript, activities of daily living, and physicians reports constitute independent reasons for rejecting Plaintiff's limitations. She indicated on her daily activities form that she could walk a half mile, but testified at the hearing that she could not walk more than 200 feet (Tr. 85, 287). She admitted to attending shows on a regular basis, (which presumably required her to sit for one and half to two hours) but told the ALJ that she could not sit for more than ten to fifteen minutes at a time (Tr. 203, 287). The Plaintiff conceded at the hearing that she had not followed her physician's advice to undergo carpal tunnel release, explaining that "there [was] no guarantee that it would cure the problems" she experienced (Tr. 280). Contrary to her testimony, Dr. Vorenkamp's April, 2004 recommendation predicted a high outcome of post-operative success, anticipating that surgery would alleviate Plaintiff's "night numbness and tingling with a low incidence of recurrence" (Tr. 256 ). Not only as a general rule do the courts cede enormous latitude to the ALJ's credibility determinations, *see Casey v. Secretary of Health and Human Services,*

987 F.2d 1230, 1234 (6th Cir. 1993), but in this case, the deference accorded the ALJ's credibility finding is coupled with ample record of evidence supporting his findings. The ALJ's credibility determination, along with Plaintiff's failure to meet her burden of establishing conclusively that her medically documented limitations could be "reasonably expected to produce" disabling pain, pursuant to *Felisky v. Bowen,* 35 F.3d, support the ALJ's findings.

### B.    Hypothetical Question

Plaintiff also argues that the hypothetical question composed by the ALJ fails to reflect Plaintiff's mental limitations. *Plaintiff's Brief* at 17. Plaintiff cites *Varley v. Secretary of HHS,* 820 F.2d 777, 779 (6th Cir. 1997), which states that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. Plaintiff submits that the ALJ's finding that she experienced moderate difficulties in concentration, persistence and pace was not reflected in the hypothetical question. *Id.*; (Tr. 22). Citing *Cole v. Secretary of HHS*, 820 F 2d 768, 775 (6th Cir. 1987), Plaintiff notes that "[f]or a response to a hypothetical question to constitute substantial evidence, each element of the question must accurately describe the plaintiff." *Plaintiff's Brief* at 17.

Plaintiff correctly states that an improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal. *Whitmore v. Bowen,* 785 F.2d 262, 263-64 (8th Cir. 1986). "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the

claimant recognized by the ALJ . . . a determination of non-disability based on such a defective question cannot stand." *See also Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994). Sixth Circuit case law also supports Plaintiff's argument that a hypothetical question must reflect an individual's limitations. *See Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004). However, although a plaintiff's relevant limitations must be acknowledged in the hypothetical question, the ALJ is not required to compose a formula-like hypothetical to avoid remand. The court in *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), rejecting the notion that a hypothetical question must contain talismanic language, found that a question was sufficient provided that it encompassed the plaintiff's relevant limitations: "The ALJ went beyond [a] simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment." *See Chafin v. Commissioner of Social Sec.,* 2005 WL 994577, 2, 4 (E.D. Mich.2005) (ALJ's hypothetical question addressed Plaintiff's mental deficiencies sufficiently by limiting him to "simple, unskilled work." Further, although the plaintiff had "moderate" deficiencies of concentration, persistence, or pace he could nonetheless perform the work of an assembler, packager, inspector, and security monitor). *See also Lyons v. Commissioner of Social Sec.* 351 F.Supp.2d 659, 662 (E.D. Mich.2004) ("ALJ took into account [the][p]laintiff's depression . . . by including limitations within the hypothetical . . . limiting the possible jobs to simple, unskilled, and routine work" ).

    Pursuant to *Smith,* the ALJ's hypothetical properly reflected his finding that Plaintiff

suffered from moderate deficiencies in concentration, persistence, and pace by including the limitation that she is unable to remember and carry out detailed instructions[3] (Tr. 298). The mental limitations, which were drawn from Plaintiff's testimony, rather that the Psychiatric Review Technique performed in August, 2003 (see footnote 3) reflected her testimony that she got easily confused and had trouble concentrating (Tr. 285). Further, the ALJ's findings as a whole supported the limitations on Plaintiff's abilities listed in the hypothetical. The ALJ observed that Plaintiff was "alert and oriented," and retained the concentrational ability to drive a car and read (Tr. 24). Even assuming, *arguendo*, that the hypothetical question inadequately stated her mental limitations, such a an error was rendered harmless by the VE's conclusion that Plaintiff was limited to unskilled jobs which required minimal training.[4]

The overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. In regard to evidentiary support for the ALJ's credibility findings, I note that in the case of a de novo review I might have found differently. However, the fact that I might draw a different conclusion based on these facts is of no import. Based on a

---

[3] The ALJ's finding of *moderate* difficulties in concentration, persistence and pace, found a greater limitation on Plaintiff's mental functioning than the conclusions of the Psychiatric Review Technique performed in August, 2003 which found that although Plaintiff suffered from depression, her concentrational limitations were *mild* (Tr. 22, 223).

[4] Plaintiff argues, (albeit in passing) that the hypothetical also failed to account for her exertional limitations. *Plaintiff's Brief* at 21. However, as discussed in section **A**., the ALJ's rejection of a portion of Plaintiff's claims of physical limitations is supported by substantial evidence and thoroughly discussed in his opinion. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20)

pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                      S/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

Dated:  November 4, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 4, 2005.

                                      S/Gina Wilson
                                      Judicial Assistant